IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CLIFFORD R. RAYBURN,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>DANNY POTTER, UNITED STATES MARSHALS, ET AL, OMAHA POLICE DETECTIVE, (last name unknown); ANDY, Sarpy County Deputy (last name unknown); UNNAMED US MARSHAL DEPUTIES PRESENT, and UNNAMED DOUGLAS COUNTY SHERIFF DEPUTIES,<br><br>　　　　　　　Defendants. | **8:23CV310**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Clifford R. Rayburn filed a Complaint, Filing No. 1, and Motion for Immediate Injunctive Relief, Filing No. 4, on July 19, 2023, but failed to include the $402.00 filing and administrative fees. The Court directed Plaintiff to either pay the fees or submit a request to proceed in forma pauperis ("IFP"). Filing No. 5. On August 28, 2023, Plaintiff filed an Amended Complaint, Filing No. 6, a second Motion for Immediate Injunctive Relief, Filing No. 7, and a Motion for Leave to Proceed IFP, Filing No. 8. On that same date, the Clerk of Court entered a text notice of deficiency informing Plaintiff that all three filings were deficient as none of them were signed and directed Plaintiff to correct the deficiency. Filing No. 9, Text Notice. Plaintiff filed a signed copy of his IFP Motion on September 15, 2023, Filing No. 8-1, and signed copies of his Amended Complaint and second Motion for Immediate Injunctive Relief on September 25, 2023, Filing No. 6; Filing No. 7-1. Upon review of Plaintiff's IFP Motion, the Court finds that Plaintiff, a nonprisoner, is financially eligible to proceed in forma pauperis. The Court now

conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). For purposes of this initial review, the Court considers the Amended Complaint, Filing No. 6, as the operative pleading which supersedes the original Complaint, Filing No. 1.

## I. SUMMARY OF AMENDED COMPLAINT

Plaintiff sues United States Deputy Marshal Danny Potter ("Potter"), an unknown Omaha Police Detective, Sarpy County Deputy "Andy (last name unknown)," "Unnamed US Marshal Deputies Present," "Unnamed Douglas County Sheriff Deputies," and the United States Marshals (collectively "Defendants") for alleged violations of Plaintiff's civil rights arising out of Defendants' actions in investigating and attempting to apprehend Plaintiff's wife.

On June 9, 2023, Potter entered Plaintiff's private property, "coming into a closed and latched gate," "with a weapon drawn to allegedly apprehend Plaintiff's wife who Potter claimed was a Federal Fugitive from Justice," which Plaintiff asserts was false. Filing No. 6 at 1, ¶¶ 3–4. "Potter took Plaintiff's wife into custody stating she had a warrant but only produced a screenshot photo of her driver's license." Id. at 2, ¶ 5. Though Plaintiff requested to see the warrant, neither Potter nor any other law enforcement officer present produced a warrant for entering Plaintiff's property nor for the arrest and detainment of Plaintiff's wife. Id. Potter also took "a cell phone valued at $1500 from the Plaintiff's residence, one Veridian Credit union Debit card belonging to the Plaintiff's account, and a Citizen watch that the Plaintiff purchased as a gift, in which he was still paying his credit card off for said purchase valued at $800." Id., ¶ 6.

2

Plaintiff subsequently contacted Potter about the phone and watch, and Potter confirmed that "he had the items and Plaintiff's wife could have them back when she turned herself in." *Id.*, ¶ 7. When Plaintiff stated he thought Potter had arrested his wife, Potter stated "that the alleged suspect 'faked an illness and was unarrested' from custody," which Plaintiff confirmed through his wife's medical records. *Id.*, ¶ 8. Plaintiff advised Potter that the phone, debit card, and watch were not paid for and Plaintiff needed them back. Potter told Plaintiff "he was not getting them back," and when Plaintiff asked Potter if he had a warrant for the items, Potter stated, "I don't need one. I am seizing the phone for evidence." *Id.* at 2, ¶ 9. When Plaintiff inquired further, Potter refused to answer any more questions, but stated that if Plaintiff's wife did not turn herself in, "we will be coming after you and hunting you down to ask questions." *Id.* at 3, ¶ 9.

On June 13, 2023, "a US Marshal and another female officer" knocked on Plaintiff's door, walked around the house, looked in windows, and entered the "locked area of the back yard." *Id.*, ¶ 11. Plaintiff did not encounter the officers on that occasion and alleges the officers did not have warrants "or even suspicion that there was anyone Potter alleged he sought present at the residence post June 9th." *Id.* Plaintiff further alleges "there was little damage other than public humiliation of Plaintiff's neighborhood, and the questions and later request that Plaintiff vacate his property upon mutual agreement due to the repeated police activity around Plaintiff's house." *Id.*

Potter and Sarpy County Deputy "Andy" came to Plaintiff's place of employment on June 28, 2023, demanding to see Plaintiff's phone and stating that Potter would arrest Plaintiff for harboring his wife. *Id.*, ¶ 12. Plaintiff denied seeing his wife since the day Potter arrested her but had spoken to her on the phone once. Potter demanded phone

numbers of associates, family, and children of Plaintiff and his wife and called Plaintiff's youngest stepdaughter while in Plaintiff's presence. Potter made physical and violent threats towards the stepdaughter as well as towards Plaintiff during this encounter. *Id.* at 3–4, ¶ 13. Potter accused Plaintiff of lying and stated, "I will be back in two days with a federal warrant for your phone and you will be in cuffs." *Id.* at 4, ¶ 14. "Potter and his associates then began sitting down the street from the Plaintiff's home, chasing people who would come and go and charging them with weapons," including Plaintiff's housekeeper. *Id.*, ¶ 15.

On July 14, 2023, Potter and at least one other deputy raided Plaintiff's residence. Plaintiff does not allege he was home on this date but states that his friend, Mr. Chenier, and another female friend were housesitting and were present. *Id.* at 4–5, ¶¶ 16–17. When Mr. Chenier opened a curtain, Potter or his associated deputy pointed a handgun at Mr. Chenier's head and screamed "you're under arrest." *Id.* at 4, ¶ 16. Mr. Chenier opened the door and Potter and his associates removed Mr. Chenier from the house and placed him in cuffs. *Id.* at 4–5, ¶ 16. Potter then "searched the entire house, later admitting to stealing mail from the basement of the home that was addressed to Plaintiff's wife, refused to produce a warrant," and took Mr. Chenier to jail on a warrant that had been previously served and satisfied. *Id.* at 5, ¶ 17.

At some point in time, Potter contacted the opposing attorney for Plaintiff's child custody modification case and stated that Plaintiff had 6 federal warrants for his arrest as did Plaintiff's wife. Plaintiff denies ever having any kind of warrant for his arrest and alleges his wife never had any federal warrants nor had she been the subject of a federal investigation or apprehension. *Id.*, ¶ 18.

4

On August 9, 2023, Potter, a law enforcement officer named "Zach" from either Omaha or Sarpy County, and Sarpy County Deputy "Andy" came to Plaintiff's parent's house in Fremont, Nebraska, stating that Plaintiff and his wife had been seen together there. *Id.* at 6–7, ¶¶ 22, 25. Plaintiff's mother called Plaintiff while the officers were present and Plaintiff spoke to Potter, advising him that he was harassing Plaintiff's family and "had no right to attempt to execute any non-violent state warrants that he allegedly had on his wife and that in fact, the issuing state of the warrant that was currently listed for Plaintiff's wife had not sought out the assistance of the US Marshals to attempt to apprehend her." *Id.* at 6, ¶ 22. Potter again did not produce a warrant for anyone's arrest, and when Plaintiff's parents denied access to search their home, Potter did not enter the home. *Id.* at 7, ¶ 25.

Plaintiff alleges Potter is doing these things to Plaintiff and abusing his authority as a "favor for a friend." *Id.* at 6, ¶ 20. Specifically, Scott D. Jochim, who is a defense attorney in a civil action Plaintiff currently has pending against his former employer for theft of funds for child support payments, personally requested that Potter "'get rid of the problem' speaking specifically of Plaintiff's wife because said attorney does not believe that Plaintiff has the common sense to navigate said civil action by himself without his wife's assistance which has not been the case in its entirety." *Id.*

As a result of these events, Plaintiff alleges he has suffered mental abuse, anguish, public humiliation, has been asked to move from his rented home due to the continued harassment of neighbors and repeated police presence at his home without a warrant, has had to change employers due to the continued harassment at his job, has lost wages, had to spend funds replacing valuable items "which Potter illegally and wrongfully stole

from his property," repair damages to his home, and "has had to deny his children coming to visit him for fear of them being held at gunpoint or intimidated or threatened by Potter and his associates." *Id.* at 7–8, ¶ 26. Plaintiff seeks $250,000.00 in damages, to have Potter terminated from his position as a Deputy US Marshal and permanently barred from working in law enforcement, and criminal charges filed against Potter and all law enforcement present during any of the incidents alleged. *Id.* at 8.

## II.  APPLICABLE STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III. DISCUSSION

Plaintiff seeks damages and other relief against several federal, city, and county law enforcement officials in both their official and individual capacities. Because Plaintiff seeks relief against both federal and state officials, his claims are properly considered as claims pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983. "A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998). To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "As a general rule, *Bivens* claims and § 1983 claims are almost identical and involve the same analysis." *Solomon v. Petray*, 795 F.3d 777, 789 n.7 (8th Cir. 2015). For the reasons explained below, Plaintiff has alleged plausible Fourth Amendment claims for damages against Defendants Potter,

the Unnamed US Marshals Deputies Present, and Sarpy County Deputy "Andy (last name unknown)" in their individual capacities, but all other claims will be dismissed.

## A. Relief Requested

Plaintiff seeks to have Potter terminated from his position as a Deputy US Marshal and permanently barred from working in law enforcement, to have criminal charges filed against Potter and the other Defendants present during any of the incidents alleged in the Complaint, and damages. However, the only relief Plaintiff may seek in this *Bivens* and § 1983 action is damages.

First, this Court lacks authority to terminate Potter's employment with the US Marshals and to bar Potter's future employment in law enforcement. "Courts do not have authority to terminate the employment of individual Defendants." *Johnson v. MCF - St. Cloud*, No. CV 22-1299 (JRT/BRT), 2022 WL 17723807, at *6 (D. Minn. Nov. 10, 2022), *report and recommendation adopted sub nom. Johnson v. MCF-St. Cloud*, No. CV 22-1299 (JRT/LIB), 2022 WL 17721510 (D. Minn. Dec. 15, 2022) (citing *Kendrick v. Faust*, No. 1:07CV00025JMMBD, 2009 WL 1972249, at *2 (E.D. Ark. July 8, 2009) ("Finally, several of Plaintiff's requests, including the termination of certain Defendants' employment from the ADC, are matters to be decided by prison personnel, not the courts."); *Nicholas v. Heffner*, 228 F. App'x 139, 141 (3rd Cir. 2007) ("The remaining relief requested is not available as the District Court lacks authority to order . . . the termination of [the defendants'] employment."); *Theriot v. Woods*, No. 2:09-CV-199, 2010 WL 623684, at *4 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983" as the court "has no authority under 42 U.S.C. § 1983

8

to . . . terminate the employment of [the defendants]")).  Accordingly, Plaintiff is not entitled to the injunctive relief he seeks.

In addition, insofar as Plaintiff requests that Defendants be criminally charged, a private plaintiff cannot force a criminal prosecution because the authority to initiate criminal charges lies only with state and federal prosecutors.  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1733 (2019) (Gorsuch, J., concurring in part and dissenting in part) ("the decision whether to institute criminal charges is one our Constitution vests in state and federal executive officials"); *United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Cragoe v. Maxwell*, No. CIV 11-4188, 2012 WL 462960, at *2 (D.S.D. Feb. 13, 2012) ("If [the pro se plaintiff] believes criminal charges are appropriate for whatever reason, this Court is not the proper entity to initiate those proceedings.") (collecting cases); *Blechinger v. Sioux Falls Hous. & Redevelopment Comm'n*, No. CIV. 12-4004-KES, 2012 WL 174653, at *3 (D.S.D. Jan. 20, 2012) (neither pro se plaintiff nor the court can charge defendant with a crime because "[w]hether to prosecute and what criminal charges to file or bring are decisions that generally rest in the prosecutor's not the court's discretion") (internal quotation marks and citation omitted).  Because the Court does not have the authority to initiate a criminal prosecution, Plaintiff's request to bring criminal charges against Defendants does not state a federal claim.

**B. Standing**

As a preliminary matter, Plaintiff appears to bring federal civil rights claims based on alleged violations of his family members', friends', or associates' civil rights. Plaintiff does not have standing to assert such claims.

The heart of standing "is the principle that in order to invoke the power of a federal court, a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (stating that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). The "irreducible constitutional minimum" of standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and citation omitted)). "The complaining party must . . . show that he is within the class of persons who will be concretely affected." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982). If a plaintiff lacks standing, the district court has no subject matter jurisdiction. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).

Here, Plaintiff lacks standing to seek redress of any injuries allegedly inflicted upon his parents when Defendants showed up at their house on August 9, 2023; upon Mr. Chenier as a result of his July 14, 2023 arrest and detention; or upon Plaintiff's housekeeper or other family members by Defendants. "Standing requires more than just a 'keen interest in the issue.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013)). "It requires allegations—and,

eventually, proof—that the plaintiff 'personal[ly]' suffered a concrete and particularized injury in connection with the conduct about which he complains." *Id.* (quoting *Spokeo, Inc.,* 578 U.S. at 338–40).  Plaintiff's Complaint contains no such factual allegations, and his claims based on alleged violations of other individuals' civil rights must be dismissed. *See Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975))); *Burgess v. City of Sioux Falls*, No. CIV 17-4027, 2018 WL 2305668, at *6 (D.S.D. May 21, 2018) ("Courts have held that it is a 'well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else.'" (quoting *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (holding that son had no liberty interest to be free of emotional trauma suffered from observing allegedly excessive police force which was directed entirely at his father))); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner lacked standing to seek an injunction against mistreatment of other prisoners).

## C.  Official Capacity Claims

### 1.  Federal Defendants

Plaintiff's official-capacity claims against Potter, the "Unnamed US Marshal Deputies Present," and the United States Marshals are barred by sovereign immunity. Absent an express waiver, the doctrine of sovereign immunity bars constitutional tort claims for money damages against the United States, its agencies, and its officers in their official capacities.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (holding that a *Bivens* cause of action cannot be brought against a federal agency).  Because "[s]overeign

immunity is jurisdictional in nature," *id.* (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction")), and because no waiver of sovereign immunity applies in this case, Plaintiff's claims alleged against the United States Marshals and against Potter and the "Unnamed US Marshal Deputies Present" in their official capacities must be dismissed for lack of jurisdiction.

### 2. *County Defendants*

Plaintiff's claims against the unknown Omaha Police Detective, Sarpy County Deputy "Andy", and "Unnamed Douglas County Sheriff Deputies" in their official capacities are actually claims against the City of Omaha, Sarpy County, and Douglas County. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."). A city or county may only be liable under section 1983 if a "policy" or "custom" of the city or county caused a violation of the plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental "custom," a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Plaintiff's Complaint fails to allege that any actions were taken pursuant to a policy or custom of the City of Omaha, Sarpy County, or Douglas County. "Although [Plaintiff] need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, he must nonetheless present some allegations, references, events, or facts from . . . which the court could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the County or a deliberate choice by a decision-maker with final authority." *Cotton v. Douglas Cty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *6 (D. Neb. Oct. 5, 2016). Accordingly, Plaintiff's official-capacity claims against the city and county defendants will be dismissed.

**D. Individual Capacity Claims**

Liberally construed, Plaintiff's allegations raise claims of unlawful search and seizure under the Fourth Amendment against Defendants in their individual capacities. *See* Filing No. 6 at 6, ¶ 19.[1] "To prevail on a § 1983 [individual-capacity] claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Torres v. City of St. Louis*, 39 F.4th 494, 504 (8th Cir. 2022) (quoting *White*, 865 F.3d at

---

[1] Plaintiff also purports to allege violations of his rights under the Eighth and Thirteenth Amendments. Filing No. 6 at 6, ¶ 19. However, "the Eighth Amendment applies only to convicted prisoners," *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citing *Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2001)), and the Thirteenth Amendment, which prohibits slavery or involuntary servitude, does not afford a private right of action, *Norambuena v. W. Iowa Tech Cmty. Coll.*, No. C20-4054-LTS, 2022 WL 987946, at *20 (N.D. Iowa Mar. 31, 2022) (citing cases).

1081). *See also Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (as with § 1983 actions, defendants in a *Bivens* action "are liable for their personal acts only"). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006)).

### 1. Unlawful Search and Seizure

As indicated above, Plaintiff's claims against Potter and the unnamed US Marshal Deputies in their individual capacities are claims under *Bivens*,[2] while the claims against the Omaha, Sarpy County, and Douglas County law enforcement officers are claims under 42 U.S.C. § 1983. The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

In the Eighth Circuit, a plaintiff has the burden of proof in a civil rights action claiming a Fourth Amendment violation for a warrantless search. *Der v. Connolly*, 666

---

[2] In *Bivens*, the United States Supreme Court recognized an implied cause of action for damages against federal officers alleged to have violated an individual's Fourth Amendment rights. The Court subsequently found the "*Bivens*" remedy available for violations of an individual's rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 17–19 (1980), and the Due Process Clause, *Davis v. Passman*, 442 U.S. 228, 230 (1979). *See Hui v. Castaneda*, 559 U.S. 799, 803 n.2 (2010) (summarizing applicability of *Bivens*). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1855 (2017).

F.3d 1120, 1127–28 (8th Cir. 2012).  However, the defendant has the burden of producing

evidence that an exception to the warrant requirement applies.

> As the Seventh Circuit explained, "[e]ven if a presumption of
> unreasonableness arises from the fact of a warrantless search [or entry],
> that does not serve in a civil case to shift 'the burden of proof in the sense
> of the risk of nonpersuasion.'"  *Valance* [*v. Wisel*, 110 F.3d 1269, 1279 (7th
> Cir. 1997)] (quoting Fed. R. Evid. 301).  Instead, such "presumption merely
> serves to impose on the defendant 'the burden of going forward with
> evidence to meet or rebut the presumption.'"  *Id.* (quoting Fed. R. Evid. 301).
> A defendant may satisfy this burden of production by "produc[ing] evidence
> of consent or of some other recognized exception to the warrant
> requirement."  *Id.* at 1278.  "Yet once the defendant has done so, 'the
> ultimate risk of nonpersuasion must remain squarely on the plaintiff in
> accordance with established principles governing civil trials.'"  *Id.* (quoting
> *Ruggiero* [*v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991))].

*Id.* at 1128.  "A plaintiff claiming that [his] Fourth Amendment rights were violated by a

warrantless [search or] entry need not plead facts affirmatively showing the absence of

any exception to the warrant requirement, because the absence of such an exception is

not a part of the plaintiff's prima facie case."  *Payne v. Galie*, 574 F. App'x 26, 27 (2d Cir.

2014) (citing *Ruggiero*, 928 F.2d at 563).

Here, Plaintiff alleges his home was searched on June 9, 2023, June 13, 2023,

and July 14, 2023, by Potter and other unidentified US Marshal Deputies, and his personal

property was seized by Potter on June 9, 2023, without a warrant.  The facts stated in the

Amended Complaint do not show than an exception to the warrant requirement applies.

A plausible Fourth Amendment violation is therefore alleged against Potter and the

Unnamed US Marshal Deputies who were involved in the searches and seizure.

However, Plaintiff's Complaint fails to allege a plausible Fourth Amendment claim

against the unknown Omaha Police Detective and the Unnamed Douglas County Sheriff

Deputies.  "'[A]n action may proceed against a party whose name is unknown if the

complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (quoting *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).    However, the allegations in Plaintiff's Complaint regarding the unknown, unnamed Omaha and Douglas County officers are not sufficiently specific to satisfy the exception to the general prohibition against fictitious parties.  *See id.*  The Complaint "does not sufficiently allege who the Doe Defendants are, what they allegedly did, what their position is for the City [or County], or any other facts that would permit [them] to be noticed or identified through discovery."  *Id.*  Furthermore, "[t]o prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation," *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017), and Plaintiff alleges no facts suggesting that any of these unnamed parties were involved in any of the searches of Plaintiff's home nor did they seize any of Plaintiff's personal property.  Accordingly, any claims against the unknown Omaha Police Detective and the Unnamed Douglas County Sheriff Deputies are dismissed without prejudice for failure to state a claim for relief against them.

Similarly, Plaintiff fails to alleges any facts suggesting Sarpy County Deputy "Andy" was involved in any of the searches of Plaintiff's home or seized any of his property. Liberally construed, though, Plaintiff may be asserting an unreasonable search and seizure claim against Sarpy County Deputy "Andy" and Potter based on their June 28, 2023 encounter with Plaintiff at his place of employment.  Plaintiff alleges Potter and "Andy" showed up at his workplace demanding to see Plaintiff's phone and stating that Potter would arrest Plaintiff for harboring his wife.  Filing No. 6 at 3, ¶ 12.  Plaintiff also

16

alleges that Potter demanded phone numbers of his and his wife's associates and that "Potter made physical threats towards Plaintiff at the time of contact with him during this encounter." *Id*. In determining whether a police-citizen encounter is consensual or implicates Fourth Amendment protections, courts "must consider the totality of the circumstances and the unique facts of each case." *United States v. Lillich*, 6 F.4th 869, 876 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 1220, 212 L. Ed. 2d 223 (2022) (internal quotation marks and citation omitted). Relevant factors in the analysis include:

> officers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

*Id*. (quoting *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008) (citations omitted)).

Here, Plaintiff alleges the two officers came to his workplace, demanded to see his phone and to obtain phone numbers of Plaintiff's associates and family members, made physical threats towards Plaintiff, obtained Plaintiff's stepdaughter's phone number, and "made Plaintiff answer a call from his stepdaughter and tell her that the marshals were not present." Filing No. 6 at 3–4, ¶¶ 12–14. Giving the Complaint it's most liberal construction, the Court finds Plaintiff has stated a plausible Fourth Amendment claim against Potter and Sarpy County Deputy "Andy" based on their June 28, 2023 encounter at Plaintiff's workplace. This claim will be allowed to proceed to service of process.

### 2. Slander

Finally, Plaintiff claims Potter slandered his name when he contacted the opposing attorney for Plaintiff's child custody modification case and falsely stated that Plaintiff had 6 federal warrants for his arrest. However, "[s]lander is not a cognizable claim under

section 1983" or *Bivens*. *Waller v. Rice*, No. 1:15-CV-01010, 2015 WL 2227799, at *2 (W.D. Ark. May 12, 2015) (citing *Miner v. Brackney*, 719 F.2d 954, 955 (8th Cir.1983). "[A] defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States." *Id.* (quoting *Ellinburg v. Lucas*, 518 F.2d 1196, 1997 (8th Cir.1975) (citations omitted)).  Accordingly, Plaintiff has failed to state a cognizable claim of slander under *Bivens* against Potter.

## IV.  MOTIONS FOR IMMEDIATE INJUNCTIVE RELIEF

Plaintiff filed a Motion for Immediate Injunctive Relief, Filing No. 4, on July 19, 2023, followed by an essentially identical Motion for Immediate Injunctive Relief, Filing No. 7, on August 28, 2023.  Plaintiff requests that Potter "be suspended of his duties as a Law Enforcement Officer until the outcome of this case or, at the very least, a court ordered investigation from an outside agency other than the United States Marshal Service for the allegations set forth in this action" because Potter has exhibited "excessive use of force," "abuse of authority and power," and "manic" and dangerous behavior "to the general public." Filing No. 7 at 1–2, ¶¶ 3–4 (punctuation and capitalization altered from original); *see also* Filing No. 4 at 1, ¶¶ 3–4.  Plaintiff asks the Court to "issue an Order suspending Deputy Potter from any position within Law Enforcement until further investigation and actions are taken to protect not only Plaintiff, but innocent citizens in which Defendant has 'strong-armed' or threatened with physical violence including but not limited to shooting innocent bystanders." Filing No. 7 at 2.

The standards set forth by *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), apply to Plaintiff's motion.  In *Dataphase*, the Eighth Circuit Court of Appeals, sitting en banc, clarified the factors district courts should consider when

determining whether to grant a motion for preliminary injunctive relief: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest. *Id.* at 114. "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. . . ." *Dataphase*, 640 F.2d at 113. The burden of proving that a preliminary injunction should be issued rests entirely with the movant. *Modern Computer Systems v. Modern Banking Systems*, 871 F.2d 734, 737 (8th Cir. 1989) (en banc) (superseded by state statute on other grounds).

The Court has carefully reviewed the record and finds that Plaintiff's allegations in this matter do not entitle him to preliminary injunctive relief. First, Plaintiff has not demonstrated that he faces a threat of irreparable harm. While Plaintiff alleges he "feels that his life could be in immediate danger if Potter is allowed to remain in his position during this action" based on Potter's past threats and behavior, Filing No. 7 at 2, ¶ 5, he has not demonstrated that any injury is likely to occur. Rather, the suggested threat of harm is merely speculative. Furthermore, Plaintiff has not filed an affidavit or verified complaint clearly showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," Fed. R. Civ. P. 65(b), as he is required to do when requesting injunctive relief without notice to the

defendants.  Lastly, as discussed above, the Court lacks authority to grant the kind of injunctive relief that Plaintiff seeks.  *See* Section III.A., *supra*.  In light of this, and in consideration of all of the factors, the Court finds "interven[tion] to preserve the status quo until the merits are determined" is not warranted at this time.  *Dataphase*, 640 F.2d at 113.

Accordingly, Plaintiff's Motions for Immediate Injunctive Relief, Filing No. 4; Filing No. 7, will be denied.  *See Trenton Indian Serv. Area v. Loudermilk*, No. 4:12 CV 143, 2013 WL 12109416, at *1 (D.N.D. July 30, 2013) (denying "perfunctory request[]" for temporary restraining order and preliminary injunction in complaint due to plaintiff's failure to comply with Fed. R. Civ. P. 65(b) and to present the court "with anything other than the brief statements contained in the complaint requesting a preliminary injunction"); *see also Vice v. Kaemingk*, No. 4:16 CV 04127 KES, 2016 WL 7263736, at *4 (D.S.D. Dec. 15, 2016) ("At this stage, [the plaintiff] cannot show that he is likely to succeed on the merits. He has only stated a claim upon which relief may be granted.  The defendants have not been served and have not had a chance to respond.  Therefore, [the plaintiff's] motions for a temporary restraining order and preliminary injunction are denied.").

## V.  CONCLUSION

Plaintiff's Amended Complaint states plausible Fourth Amendment claims against Potter, the "Unnamed US Marshal Deputies Present," and Sarpy County Deputy "Andy (last name unknown)," and those claims may proceed to service of process.  However, the Court cautions Plaintiff that this is only a preliminary determination based on the allegations found within the Amended Complaint.  This is not a determination of the merits of his claims or potential defenses to them.  Plaintiff's claims against the unknown Omaha

Police Detective, "Unnamed Douglas County Sheriff Deputies," and the United States Marshals will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

As a litigant proceeding in forma pauperis in this case, Plaintiff is entitled to have service of process performed by the United States Marshals. However, the United States Marshal's Service cannot initiate service upon unknown defendants or defendants who cannot be properly identified based on the information provided. Plaintiff has not provided any identifying information for the Unnamed US Marshal Deputies Present nor has he provided sufficient identifying information for Sarpy County Deputy "Andy (last name unknown)." Therefore, the Court will give Plaintiff 30 days in which to take reasonable steps to identify the individual Unnamed US Marshal Deputies Present during the June 9, June 13, and July 14, 2023 searches of his home and to provide additional identifying information for Sarpy County Deputy "Andy" (i.e. last name), and notify the court of their names, after which the Court will initiate service of process. If Plaintiff is unable to provide additional information, then he must inform the Court of such. If Plaintiff fails to respond to this order, then his claims against the Unnamed US Marshal Deputies Present and Sarpy County Deputy "Andy" will be dismissed without prejudice and this matter will proceed to service of process against Defendant Potter only.

IT IS THEREFORE ORDERED that:

1.      Plaintiff's Motion for Leave to Proceed in Forma Pauperis, Filing No. 8, is granted, and the Complaint shall be filed without payment of fees.

2.      The following claims shall be dismissed or proceed further as specified below:

a.     Plaintiff's claims for injunctive relief and for the initiation of criminal proceedings against Defendants are dismissed.

b.     Plaintiff's claims against the United States Marshals and all Defendants in their official capacities are dismissed without prejudice.

c.     Plaintiff's claims against Defendants Omaha Police Detective (last name unknown) and Unnamed Douglas County Sheriff Deputies in their individual capacities are dismissed without prejudice.

d.     For purposes of initial review only, Plaintiff has stated plausible Fourth Amendment claims against Danny Potter, the Unnamed US Marshal Deputies Present, and Sarpy County Deputy "Andy (last name unknown)" in their individual capacities.

3.     Plaintiff will have 30 days from the date of this Memorandum and Order to take reasonable steps to provide the names or other additional identifying information for the Unnamed US Marshal Deputies Present and Sarpy County Deputy "Andy (last name unknown)" and notify the Court of that information, after which the Court will initiate service of process.  If Plaintiff is unable to provide additional information regarding the defendants' identities, then he must inform the Court of such.  Failure to take any action will result in dismissal of Plaintiff's claims against the Unnamed US Marshal Deputies Present and Sarpy County Deputy "Andy (last name unknown)" without prejudice and without further notice.

3.     The Clerk of Court is directed to set a pro se case management deadline using the following text: **November 16, 2023**: check for Plaintiff's response regarding Defendants' names and identifying information.

4.     Plaintiff's Motions for Immediate Injunctive Relief, Filing No. 4; Filing No. 7, are denied.

5.     Plaintiff shall keep the Court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal without further notice.

Dated this 17th day of October, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge